Filed 3/22/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061916 |
| v. | (Super. Ct. No. 08CF1591) |
| RICHARD CURTIS MORRIS, JR., | O P I N I ON |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Lewis W. Clapp, Judge.  Affirmed.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Lynne G. McGinnis and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

1

This case calls on us to address the actus reus required to convict a nonkiller of first degree murder under the amended felony-murder statute when the nonkiller acts with an intent to kill. (Pen. Code, § 189, subd. (e)(2)). Defendant Richard Curtis Morris, Jr., previously convicted of first degree murder with rape, robbery, and murder for financial gain special circumstances, appeals from the trial court's summary denial of his petition for resentencing (Petition) under Penal Code section 1172.6.[1] He contends that to convict a nonkiller of first degree murder under the amended felony-murder statute when the nonkiller acts with an intent to kill, the prosecution must prove the nonkiller assisted the actual killer in the killing itself. According to him, the record of conviction in this case, at most, demonstrates the jury found he aided an actor in committing the underlying felonies, which is an insufficient basis for denying a resentencing evidentiary hearing.

We disagree with defendant on the law and its application in this case. A person who, with an intent to kill, directly commits or aids and abets an enumerated felony in which a death occurs commits the actus reus necessary for felony murder under the amended felony-murder statute by acting in furtherance of the common design of the felony. (See *People v. Curiel* (2023) 15 Cal.5th 433, 464 (*Curiel*).) The jury instructions and jury verdicts in this case establish the jury necessarily concluded defendant possessed an intent to kill during the commission of the underlying felonies and aided and abetted the actual killer in committing those felonies. Because the record of conviction establishes, as a matter of law, defendant is not eligible for resentencing, the trial court

---

[1] All further statutory references are to the Penal Code. Defendant filed the Petition in May 2022 pursuant to former section 1170.95. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. For purposes of clarity, we refer to the statute as section 1172.6.

properly denied the Petition without issuing an order to show cause and holding an evidentiary hearing. Accordingly, we affirm the postjudgment order.

## FACTS[2]

"James Stockwell owned the Mustang Club topless bar. On January 1, 1987, Stockwell returned to his condominium with his girlfriend, [S.]F., about 11:00 p.m. As they entered the condominium from the garage, [S.F.] and Stockwell were attacked by a man carrying a gun. As instructed, [S.F.] and Stockwell lay down on the dining room floor. As Stockwell was being handcuffed, [S.F.] noticed the presence of a second man. [S.F.] and Stockwell offered the men money and jewelry, and Stockwell offered to take them to his club to obtain more money.

"One of the men took Stockwell upstairs. The other man then took [S.F.] upstairs; she saw Stockwell face down at the top of the stairs, where he was negotiating with the men. The men took [S.F.] into a bedroom. Both raped her. One of the men then tied [S.F.] up and told her they were going to take Stockwell to the club.

"After the men left in Stockwell's Camaro, [S.F.] saw Stockwell on the floor, and realized he had been shot. [S.F.] had not heard any gunshots. [S.F.] ran to a neighbor's home for help. When she and the neighbor returned to her condominium, they discovered Stockwell was dead. A .22-caliber shell casing was found near Stockwell's body. Stockwell died as a result of a single gunshot wound to the head from a small caliber bullet.

"A standard forensic sexual assault examination was performed on [S.F.] at the hospital, and various samples were collected from [S.F.]'s clothes and body. In 1987, blood type analysis was performed on the samples; DNA analysis was not then available.

---

[2]       We summarize the facts of the underlying crimes for context, and to do so we draw from the unpublished opinion issued by another panel of this court concerning defendant's direct appeal following his conviction. (*People v. Morris* (Mar. 18, 2015, G048926) [nonpub. opn.] (*Morris I*).)

3

The samples were analyzed again in 2009 and 2012, using DNA testing. Defendant's DNA matched the DNA from the samples on all 15 markers used. . . ." (*Morris I, supra*, G048926.)

## PROCEDURAL BACKGROUND

In 2013, a jury found defendant guilty of first degree murder (§ 187, subd. (a)). It also found true three special circumstances—murder for financial gain (§ 190.2, subd. (a)(1)); murder during the commission of a robbery (*id*. at subd. (a)(17)(A)); and murder during the commission of a rape (*id*. at subd. (a)(17)(C)). After finding true an alleged prior serious felony conviction, the court sentenced defendant to life without the possibility of parole, plus a consecutive determinate term of five years. The ensuing judgment was affirmed on appeal. (*Morris I, supra*, G048926.)

Roughly nine years later, defendant filed the Petition seeking resentencing pursuant to section 1172.6. After the trial court appointed counsel for defendant, the parties provided briefing. Defendant argued he made the requisite prima facie showing of entitlement to relief because he could have been convicted of first degree murder under a now invalid felony-murder theory, meaning the court should issue an order to show cause and hold an evidentiary hearing. The People opposed the Petition, contending the jury instructions and jury special circumstance findings evidenced, as a matter of law, defendant was not entitled to resentencing relief.

The trial court held a hearing at which it summarily denied the Petition. In a written statement of decision, the court explained: although the jury was instructed on two theories of first degree murder, namely premeditated and deliberate murder and felony murder, the jury was also instructed on three felony-murder special circumstances; the special circumstance instructions required a finding of specific intent to kill; and, the jury's true finding concerning each special circumstance meant it necessarily concluded defendant acted with an intent to kill, precluding him from resentencing eligibility as a matter of law.

4

Defendant timely appealed.

## DISCUSSION

Defendant contends the denial of the Petition at the prima facie stage was error because the jury could have convicted him of first degree murder under a now invalid felony-murder theory. Specifically, he argues nothing in the record of conviction evidences the jury made a finding that would satisfy the applicable actus reus required under the amended felony-murder statute. From his perspective, this means the record of conviction does not establish his resentencing ineligibility as a matter of law, and therefore, he is entitled to an evidentiary hearing. We conclude defendant's position is based on a misinterpretation of the relevant law, and application of the correct law demonstrates the trial court did not err.

I.    *The Section 1172.6 Framework and Standard of Review*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished that purpose by substantively amending sections 188 and 189, and adding what later became section 1172.6.

Under section 188, subdivision (a)(3), as amended, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." And under section 189, as amended, to be liable for felony murder, a person must be one of the following: (1) the actual killer; (2) although not the actual killer, a person who "with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree"; or (3) a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e).)

5

Persons convicted of felony murder or murder under a natural and probable consequences theory may seek resentencing pursuant to section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) The process begins with the filing of a petition in the court which sentenced the defendant. (§ 1172.6, subd. (a); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Upon receipt of a petition, the court examines whether the petition, on its face, complies with statutory requirements. (§ 1172.6, subd. (b)(2); *Lewis,* at p. 960.) If it does, the court reviews the petition, any briefing submitted by the prosecution and the petitioner, and readily ascertainable information, such as the record of conviction, to determine if the petitioner has made a prima facie case for relief. (§ 1172.6, subd. (c).) The record of conviction includes, inter alia, jury instructions and verdict forms. (*People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*).) "In reviewing any part of the record of conviction at [the prima facie stage], a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis,* at p. 972.)

If the record of conviction establishes, as a matter of law, the petitioner is not eligible for resentencing, the court may summarily deny the petition without further proceedings. (*Strong, supra*, 13 Cal.5th at p. 708; *Harden, supra*, 81 Cal.App.5th at p. 52.) If, on the other hand, the petitioner would be entitled to relief if his or her factual allegations were proven, the court must issue an order to show cause. (*Strong,* at p. 708.) At a subsequent hearing, the parties may offer new evidence and the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is ineligible for resentencing — i.e., would be guilty of murder under the amended statutes. (§ 1172.6, subd. (d)(3); *Lewis, supra*, 11 Cal.5th at p. 960; *Harden,* at p. 51.)

We apply the de novo standard of review to an appeal from a trial court's denial of a section 1172.6 petition at the prima facie stage. (*Harden, supra*, 81 Cal.App.5th at p. 52.)

6

## II.     *The Jury Instructions*

At defendant's trial, the court instructed the jury on two theories of first degree murder liability: a premeditated and deliberate murder, and the former felony-murder rule. The jury was also instructed on aiding and abetting in the context of a felony murder: "In order to be guilty of murder[] as an aider and abettor to a felony murder, the accused and the killer must have been jointly engaged in the commission of the [r]ape and/or [r]obbery at the time the fatal wound was inflicted."

With respect to the special circumstance allegations, the court instructed the jury with general special circumstance instructions, as well as instructions specific to the rape, robbery, and financial gain allegations against defendant. A CALJIC 8.80 instruction provided, in relevant part: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances is true: murder during the commission or attempted commission of a rape, murder during the commission or attempted commission of a robbery, and murder for financial gain. [¶] . . . [¶] If you find beyond a reasonable doubt that the defendant was either the actual killer or an aider or abettor but you are unable to decide which, then you must also find beyond a reasonable doubt the defendant with an intent to kill aided and abetted an actor in the commission of the murder in the first degree in order to find the special circumstance to be true. On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find the defendant intended to kill a human being in order to find the special circumstance true." A separate instruction requested by defendant and given to the jury read: "In order to find the special circumstances true for a defendant who is not the actual killer, or when you cannot decide whether he is the actual killer or an aider and abettor, the People must prove that [sic] beyond a reasonable doubt that the defendant acted with the intent to kill."

7

III.   *The Dispute*

The prosecution contended below, and maintains on appeal, defendant is not eligible for resentencing as a matter of law because of the jury's true findings concerning the special circumstance allegations.  So the argument goes, the jury instructions required the jury to find defendant acted with an intent to kill and a finding of such an intent precludes defendant from obtaining section 1172.6 relief.

Defendant does not dispute the jury's mens rea finding of intent to kill or the relevance of such a finding on liability under the amended felony-murder statute. Instead, for the first time on appeal, he focuses on the actus reus component of felony murder for an aider and abettor.  Specifically, he notes a subtle difference in language between the CALJIC 8.80 instruction given to the jury in his case and the portion of amended section 189 which concerns a person who is not the actual killer.  The former required the jury to find "the defendant with an intent to kill aided and abetted an actor in the commission of the murder in the first degree . . . ."  The latter requires a finding the defendant, "with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree."  (§ 189, subd. (e)(2).)  Based on the discrepancy, defendant argues the jury could have found the special circumstances true by concluding he simply aided and abetted someone in the underlying felonies, whereas the amended felony-murder statute necessitates aiding and abetting the actual killer in the killing itself.  We turn first to construction of the relevant statutory language.

IV.   *Actus Reus for Felony Murder Under Amended Section 189*

As amended, section 189 provides, in relevant part, that "[a]ll murder . . . that is committed in the perpetration of, or attempt to perpetrate, . . . rape . . . [or] robbery . . . is murder of the first degree."  (§ 189, subd. (a).) That a murder occurs during the commission of such a felony, however, is insufficient standing alone to convict a person.  Rather, one of the following must also be satisfied: "(1) [t]he person was the actual killer[;] [¶] (2) [t]he person was not the actual killer, but,

8

with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree[; or] [¶] (3) [t]he person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (§ 189, subd. (e).) The focus in this case is the second category of persons.

Unlike the actual killer, a person who is not the actual killer must both have a certain mental state (mens rea) and have engaged in a specified act (actus reus) to be convicted of felony murder under the amended statutes. (§ 189, subds. (e)(1) & (2); see *People v. Lopez* (2023) 88 Cal.App.5th 566, 581 (*Lopez*), review den. May 31, 2023, S279347 [intent to kill plus aiding actual killer in committing first degree murder]; *Strong, supra*, 13 Cal.5th at p. 703 [major participant plus reckless indifference to human life].) The relevant mens rea in this case, which is indisputably evidenced by the record of conviction, is an intent to kill. (§ 189, subd. (e)(2).) The actus reus component requires a closer analysis.

The statute speaks of aiding "the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).) This phrase is a legal term of art which, contrary to defendant's assertion, is not limited to assisting the killing itself. Although "murder in the first degree" may still be committed by an actual killer through a willful, deliberate and premeditated act, that is not the only way. Someone who personally commits what turns out to be the homicidal act while acting in furtherance of the common design of an enumerated felony, would also be guilty of first degree murder as an actual killer under the amended statutes. (See § 189, subds. (a) & (e)(1); *People v. Pulido* (1997) 15 Cal.4th 713, 716 [felony-murder homicidal act involves killing while acting in furtherance of common design]; *People v. Washington* (1965) 62 Cal.2d 777, 782-783 [to constitute felony murder, killing must be committed by person jointly engaged in underlying felony and done in furtherance of common design]; *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1199 [no mens rea requirement for actual killer

9

under amended felony-murder statute]; *People v. Vang* (2022) 82 Cal.App.5th 64, 88 [person who personally commits homicidal act is actual killer under amended felony-murder statute].)  With such an act occurring in furtherance of the underlying common design, all others who are engaged in the commission of the felony—i.e., acting in furtherance of the common design—would necessarily be aiding the killer in the commission of murder in the first degree.  Thus, the actus reus required for those possessing an intent to kill is simply aiding the underlying felony in which a qualifying death occurs.  (*People v. Hollywood* (Feb.28, 2024, B323018) __Cal.App.5th __, __ [2024 WL 8323201]; *Lopez, supra*, 88 Cal.App.5th at pp. 577-578.)

The Supreme Court's recent decision in *Curiel* lends credence to such an interpretation.[3]  There, in providing a contrasting example to the direct aiding and abetting and natural and probable consequences case before it, the court discussed the jury findings that would ordinarily preclude a nonkiller felony-murder defendant from resentencing eligibility.  (*Curiel, supra*, 15 Cal.5th at p. 464.)  Citing section 189, subdivision (e)(2), it explained that if a jury made findings of (1) an "intent to kill," (2) "the commission or attempted commission of a felony enumerated in the statute," and (3) "the death of a person during the commission or attempted commission of the enumerated felony," "the jury's findings would conclusively establish all of the elements of felony murder under current law."  (*Curiel,* at p. 464.)  In such a situation, "the jury's findings would completely refute a petitioner's allegation that he or she could not currently be convicted of murder because of changes to sections 188 and 189."  (*Ibid*.)  These statements from the Supreme Court clarify that the actus reus embodied in section 189, subdivision (e)(2) is simply aiding the enumerated felony (or attempted enumerated felony).

---

[3]	The decision in *Curiel* came after the parties' original appellate briefing was complete.  We issued an order requesting supplemental briefing regarding *Curiel*'s impact on this case, and we have considered the supplemental briefs filed by both sides.

10

Our reading of the statute is also consistent with the Supreme Court's earlier decision in *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*). At issue there was the meaning of nearly identical statutory language formerly applicable to felony-murder special-circumstance findings: "'Every person whether or not the actual killer found guilty of intentionally *aiding, abetting . . . or assisting* any actor *in the commission of murder in the first degree* shall . . . .'" (*Id.* at p. 900, citing former § 190.2, subd. (b).) The defendant asserted this language required the prosecution to prove he assisted the killings themselves, not just the underlying felonies. (*Dickey,* at p. 900.) The high court rejected the argument, explaining that one who aids and abets the commission of an underlying felony necessarily aids and abets first degree murder when another felony actor kills while acting in furtherance of the felony's common design. (*Ibid.*) In other words, assisting the underlying felony satisfies the actus reus embodied by the phrase "assisting someone in the commission of murder in the first degree."

We recognize the statutory language considered in *Dickey* referenced assisting "any actor" (*Dickey, supra*, 35 Cal.4th at p. 900), whereas the statutory provision at issue in this case speaks of assisting "the actual killer" (§ 189, subd. (e)(2)). The distinction is of no import to the issue before us. Before the amendments, and now, the person who kills while acting in furtherance of the common design of the underlying felony is the actual killer and is guilty of first degree murder irrespective of his or her mental state regarding the killing. (See *People v. Garcia* (2022) 82 Cal.App.5th 956, 962-964, 967-968 [describing actual killer's liability under former felony-murder rule and concluding no indication Legislature intended to modify felony-murder rule as applied to actual killer].)

Our interpretation is also consistent with the legislative history of Senate Bill 1437. Among the Legislature's expressed purposes for adopting the statutory amendments was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the

11

underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.)  The focus for the second category of persons was the mens rea, not the actus reus.  This is underscored by statements in the final Senate report concerning the legislation:  "This bill does not eliminate the felony murder rule.  The purpose of this bill is to merely revise the felony murder rule to prohibit a participant in the commission or attempted commission of a felony that has been determined as inherently dangerous to human life to be imputed to have acted with implied malice, unless he or she personally committed the homicidal act."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended Aug. 30, 2018, p. 7.)

Defendant urges us to interpret the statute to require an act that aids the killer in committing the killing for a person who possesses an intent to kill to be convicted under a felony-murder theory.  This is not only inconsistent with the Supreme Court's statement in *Curiel* and the language of the statute discussed above which references "murder in the first degree," not "killing," but it also runs contrary to express legislative intent.  An overarching goal of the Legislature was to ensure a person would be punished "according to his or her own level of individual culpability," or stated differently, to "more equitably sentence offenders in accordance with their involvement in homicides."  (Stats. 2018, ch. 1015, § 1.)  Under defendant's interpretation, a person harboring the heightened mental state of an intent to kill (i.e., express malice) would need to engage in a more significant act vis-à-vis the killing, namely assist the killing itself, than someone with the less culpable mental state of reckless indifference to human life, who would simply have to be a major participant in the underlying felony.  Well-established principles of statutory interpretation caution against adopting an interpretation that runs counter to express legislative intent.  (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227; *People v. Crowles* (1993) 20 Cal.App.4th 114, 118.)

*People v. Ervin* (2021) 72 Cal.App.5th 90 (*Ervin*), a murder resentencing case on which defendant heavily relies, is unavailing.  There, in the underlying trial, the

12

prosecution pursued two theories of first degree murder liability related to the death of a person whom defendant allegedly shot while committing a robbery with others: premeditated and deliberate murder, and felony murder. (*Id*. at p. 103.) The jury convicted the defendant of first degree murder and found true two felony-murder special-circumstance sentencing enhancement allegations. (*Ibid*.) It simultaneously found not true an allegation the defendant personally used a firearm in the commission of the murder. (*Ibid*.) The special circumstance instruction given stated that if the jury could not decide whether the defendant was the actual killer or an aider and abettor, then to find the special circumstance allegations true it needed to find the defendant "'intended either to kill a human being or to aid another in the killing of a human being[.]'" (*Id*. at p. 107, italics omitted.)

At the prima facie stage concerning the defendant's resentencing petition, the trial court agreed with the prosecution that the jury's felony-murder special-circumstance findings precluded the defendant from resentencing eligibility and denied the petition. (*Ervin, supra*, 72 Cal.App.5th at p. 100.) Another panel of this court reversed on appeal, concluding the special circumstance findings were not conclusive as a matter of law. (*Id*. at p. 111.) Two particularities led to that conclusion. First, at multiple points during the closing arguments, the prosecutor wrongly conveyed the jury could find the special circumstances true by simply finding the defendant participated in the underlying felony during which a person was killed without any mens rea finding. (*Id*. at pp. 109-110.) Second, the prosecutor based its case on the defendant being the actual shooter, but the jury found not true the allegation he used a firearm in committing the murder. (*Id*. at pp. 110-111.) From these case specific circumstances, *Ervin* reasoned "it [was] possible the jurors misinterpreted the [special circumstance] instruction" to mean they could find the special circumstances true by generally finding the defendant aided and abetted the commission of the underlying felonies and nothing more. (*Id*. at pp. 108-109.) According to *Ervin*, such a possible finding was not enough to preclude

13

resentencing as a matter of law because the amended felony-murder statute requires the more specific finding of "aid[ing] and abet[ing] 'the actual killer . . . with the intent to kill." (*Id*. at p. 109.)

Ervin is not determinative of the matter raised in this case. With respect to the law, there is no indication the parties in that case raised a question about the proper interpretation of the amended felony-murder provision at issue here. Therefore, it was not necessary for the court to employ principles of statutory interpretation, including grappling with cases such as *Dickey*, to make an ultimate determination about the bounds of the amended law as it relates to a person who possesses an intent to kill. "Cases are not authority, of course, for issues not raised and resolved." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 943; cf. *People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7; *Community Cause v. Boatwright* (1987) 195 Cal.App.3d 562, 576.) Further, the special circumstance jury instruction given in *Ervin* was markedly different than that given to the jury in this case. The *Ervin* instruction was written in the disjunctive with only one portion expressly referencing an intent to kill. Added to the extremely unique circumstances evidenced in the record, *Ervin* effectively concluded the jury's special circumstance findings should not have ascribed to them the same implications they would otherwise have in a typical case. Those exceptional circumstances are not present here, and the special circumstance instruction given in this case clearly required a finding of intent to kill.

V.      *Application of the Law to Defendant's Circumstances*

Turning to the circumstances in this case, the record of conviction demonstrates as a matter of law defendant is not eligible for resentencing. Two jury instructions, and the verdicts related thereto, lead us to so conclude.

First, a special circumstance instruction specified that if the jury could not decide whether defendant was the actual killer or an aider and abettor, the jury needed to "find beyond a reasonable doubt the defendant with an intent to kill aided and abetted an

14

actor in the commission of the murder in the first degree" in order to render a true finding on any of the special circumstances. As previously stated, there is no dispute the jury's true findings on the three special circumstances necessarily mean it concluded defendant possessed a mens rea which would be sufficient for a felony-murder conviction under amended section 189 — an intent to kill. (§ 189, subd. (e)(2).)

Second, the court gave a felony-murder aider and abettor instruction, which provided in relevant part: "In order to be guilty of murder[] as an aider and abettor to felony murder, the accused and the killer must have been jointly engaged in the commission of the [r]ape and/or [r]obbery at the time the fatal wound was inflicted." Thus, if the jury's first degree murder guilty verdict was based on a conclusion that defendant was simply an aider and abettor to felony murder, not the actual killer or a direct aider and abettor of premeditated murder (both of which would preclude entitlement to resentencing), the jury necessarily found defendant was engaged in committing the underlying felonies with "the killer" at the time the homicidal act took place. Under our interpretation of the amended felony-murder statute, such a finding satisfies the "aid[ing], abet[ting] . . . or assist[ing] the actual killer in the commission of murder in the first degree" component.[4] (§ 189, subd. (e)(2).)

Because the jury's verdicts embody findings that could lead to defendant being convicted under amended section 189, the record of conviction demonstrates as a matter of law defendant is not eligible for resentencing under section 1172.6. It follows the trial court did not err by denying the Petition without issuing an order to show cause and holding an evidentiary hearing.

---

[4] Because we find the relevant actus reus finding is supplied by the first degree murder instructions and the guilty verdict with respect thereto, we need not decide whether the jury's special circumstance findings would supply the necessary actus reus — a matter on which the dissent hinges its conclusion and the parties disagree.

15

## DISPOSITION

The postjudgment order is affirmed.


                                        DELANEY, J.

I CONCUR:


O'LEARY, P. J.

Moore, J., Dissenting.

A participant in a designated felony (e.g., a robbery or a rape) may be liable for first degree felony murder if a death occurs during the underlying felony. This appeal concerns only one theory of liability under California's revised (current) felony-murder rule: "The person was not the actual killer, but with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (Pen. Code, § 189, subd. (e)(2).)[1]

Here, there is no dispute that the record of conviction (the jury instructions and the verdicts) establishes as a matter of law that Richard Curtis Morris, Jr., acted with the requisite intent to kill (the mens rea). The dispositive issue is whether the record of conviction establishes as a matter of law that Morris also committed the requisite acts (the actus reus). (See *People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*) ["A finding of intent to kill does not, standing alone, cover all of the required elements"].)

The majority and I disagree about the acts the People are required to prove (the actus reus) within the meaning of section 189 (e)(2).

"'When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.'" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131.) "'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature[.]'" (*Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 850.) Our role "is simply to

---

[1] Further undesignated statutory references are to the Penal Code; the word "subdivision" is omitted throughout. There are only two other theories of liability under the current felony-murder rule: "A participant in . . . a [designated] felony . . . in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] . . . [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189 (e)(1) & (e)(3).)

1

ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 (*Vasquez*).)

The language of section 189 (e)(2) is plain and unambiguous. In a felony-murder prosecution of a nonkiller participant in the underlying felony who acted with the intent to kill (the mens rea), the People are required to prove that the defendant aided, abetted, counseled, commanded, induced, solicited, requested, or assisted *the actual killer in the commission of first degree murder* (the actus reus).

This plain meaning interpretation of section 189 (e)(2) is consistent with how trial courts currently instruct jurors on the revised felony-murder rule, using the official jury instruction for nonkiller coparticipants in designated felonies. (CALCRIM No. 540B.) A trial court first instructs the jury that the actual killer is referred to in the instruction as "the perpetrator." (CALCRIM No. 540B.) The court then instructs the jury as to the required elements the People must prove, including, in relevant part: the defendant participated in the underlying felony; the defendant intended to kill; and "[t]he defendant (aided and abetted[,])/ [or] counseled[,]/ [or]commanded[,]/ [or] induced[,]/ [or] solicited[,]/ [or] requested[,]/[or] assisted) *the perpetrator* in the commission of first degree murder . . . ." (CALCRIM No. 540B, italics added.)[2]

Conversely, the majority interprets the current felony-murder rule to mean that for a nonkiller participant in the underlying felony who acts with the intent to kill

---

[2] "The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California. The goal of these instructions is to improve the quality of jury decision making by providing standardized instructions that accurately state the law in a way that is understandable to the average juror." (Cal. Rules of Court, rule 2.1050(a).) However, the Judicial Council's official pattern jury instructions are not binding authority. (See *People v. Mojica* (2006) 139 Cal.App.4th 1197, 1204, fn. 4 ["Although pattern jury instructions are prepared by distinguished legal scholars and provide a valuable service to the courts, they are not the law and are not binding"].)

(the mens rea), the People need merely to prove as to the required acts (the actus reus) that the defendant "was engaged in committing the underlying felonies with 'the killer' at the time the homicidal act took place." (Maj. opn., *ante*, p. 15.)

I respectfully disagree. The majority departs from the plain meaning of section 189 (e)(2) and broadens its "scope by reading into it language it does not contain [and] by reading out of it language it does." (See *Vasquez, supra*, 45 Cal.4th at p. 253.)

To be clear, I agree with the majority that the jury instructions and verdicts in the instant case establish as a matter of law that Morris intended to kill, and he was engaged in committing the underlying felonies (rape and robbery) with the killer at the time the homicidal act took place. (See Maj. opn., *ante*, pp. 14–15.)

However, without considering the underlying facts, the record of conviction does not establish as a matter of law that Morris "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189 (e)(2).) This actus reus requirement of the current felony-murder rule was understandably never considered, deliberated upon, or found true by the jury in Morris's case. (Accord, *People v. Ervin* (2021) 72 Cal.App.5th 90, 108–109 [the jury found defendant "aided and abetted *another* in the commission of the robbery or burglary (that ultimately led to the killing of a human being), rather than a more specific finding that [he] aided and abetted 'the actual killer . . . with the intent to kill'"].)

Thus, I would reverse the trial court's ruling, which denied Morris's petition at the prima facie stage and remand the matter for an evidentiary hearing. (Former § 1170.95; now § 1172.6[3]; *People v. Lewis* (2021) 11 Cal.5th 952, 972 ["In reviewing any part of the record of conviction at [the prima facie stage], a trial court should not engage in 'factfinding involving the weighing of evidence'"].)

---

[3] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

The majority's holding largely relies on the Supreme Court's analysis in *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*). But in *Dickey*, the Court was <u>not</u> interpreting the current felony-murder rule: aiding and abetting "*the actual killer* in the commission *of murder* in the first degree." (§ 189, subd. (e)(2), italics added.) The Court was interpreting the former felony-murder special-circumstance enhancement: aiding and abetting "*any actor* in the commission *of the murder* in the first degree." (§ 190.2, former subd. (b), added by initiative measure Prop. 7, § 6, approved by the electorate Nov. 7, 1978, italics added.) The Court rejected defendant's argument that "the prosecution was required to prove, not only that he aided and abetted the burglaries and robberies, but also that he 'assisted in the killings themselves.'" (*Dickey*, at p. 900.)

However, the Supreme Court's analysis in *Dickey* was explicitly premised on the former felony-murder rule: "All persons aiding or abetting the commission of burglary or robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*Dickey, supra*, 35 Cal.4th at p. 900.) Under the former (now defunct) felony-murder rule, any person (i.e., any actor) who participated in the underlying felony with the killer at the time the homicidal act took place was guilty of first degree felony murder, regardless of intent. But the scope of the current felony-murder rule is narrower than the scope of the former felony-murder rule that was analyzed and applied in *Dickey*. (See *People v. Strong* (2022) 13 Cal.5th 698, 703 ["the Legislature significantly narrowed the scope of the felony-murder rule"].)

When the Legislature amended section 189 and significantly narrowed the scope of the felony-murder rule, it did not use the words "any actor" (i.e., any participant in the felony) as used in the felony-murder special-circumstance enhancement. (See § 190.2 (c).) Rather, the Legislature chose the words: "the actual killer." (See § 189 (e)(2).) When interpreting statutes, we must give effect to the words chosen by the Legislature. (*San Diego Police Officers' Assn. v. City of San Diego Civil Service Com*.

4

(2002) 104 Cal.App.4th 275, 284 ["In construing a statute we are required to give independent meaning and significance to each word, phrase, and sentence in a statute and to avoid an interpretation that makes any part of a statute meaningless"].)[4]

In short, the Supreme Court's nearly two-decades-old analysis in *Dickey* does not apply to California's current felony-murder rule. (See, e.g., *People v. Stevens* (1996) 48 Cal.App.4th 982, 985 [the party's "position is based on an analysis no longer viable under California law"]; see also *Dickey*, *supra*, 35 Cal.4th at p. 901 ["It is axiomatic a decision does not stand for a proposition not considered by the court"]; *Curiel*, *supra*, 15 Cal.5th at p. 461 [in an analysis of "amendments to section 188, concerning malice," the Supreme Court noted that "the amendments to section 189, concerning the felony-murder rule, are inapplicable here"].)

It may be helpful to illustrate the distinction between the two divergent interpretations of the current felony-murder rule by way of a hypothetical bank robbery involving three coparticipants. Defendant A entered the bank with a firearm and accidentally shot and killed a bank teller during the robbery. Defendant B also entered the bank with a firearm, but he did not intend to kill anyone. Defendant C was an unsavory character with the intent to kill, but his role in aiding and abetting the robbery was limited to keeping the getaway car running and watching the front door.

Defendant A is almost certainly liable for first degree felony murder because he was the actual killer, regardless of his mental state. (See § 189 (e)(1).) Defendant B, who had no intent to kill, is arguably liable for first degree felony murder if

---

[4] The majority describes the phrase "actual killer in the commission of murder" as used in section 189 (e)(2) as a "legal term of art." (Maj. opn., *ante*, p. 9.) I disagree. I think the statute means what it says and says what it means. (See *People v. Vang* (2022) 82 Cal.App.5th 64, 91 ["the term 'actual killer' means someone who personally killed the victim"]; see also *People v. Lopez* (2022) 78 Cal.App.5th 1, 4 ["the term 'actual killer' as used in the revised felony-murder rule . . . refers to someone who personally killed the victim and is not necessarily the same as a person who 'caused' the victim's death"].)

5

the People are able to prove he was a major participant in the robbery who acted with reckless indifference to human life.  (See § 189 (e)(3).)

Defendant C had the intent to kill, so under the majority's interpretation of section 189 (e)(2), he would be liable for first degree felony murder if the People were simply able to prove that he was jointly engaged *in the commission of the robbery* with Defendant A at the time the shooting of the teller inside the bank took place.  But under the plain meaning interpretation of section 189 (e)(2) the People would be required to prove not only that Defendant C participated in the robbery, but also that he aided, abetted, counseled, commanded, induced, solicited, requested, or assisted Defendant A *in the commission of first degree murder*.[5]  (See CALCRIM No. 540B.)

In this case, there must be a weighing of the evidence to determine if the People will meet their burden to prove Morris is guilty under one of the three liability theories under the current first degree felony-murder rule (analogous to the hypothetical), or some other viable murder liability theory under current law.

To conclude, and without expressing my views on the merits of the section 1172.6 petition, I see no reason why Morris should not be entitled to the statute's procedural protections, which include an evidentiary hearing.  This disposition would appear to be in harmony with each of the Supreme Court's major section 1172.6 pronouncements over the last several years.  (See, e.g., *Curiel*, *supra*, 15 Cal.5th at pp. 440–441 [defendant entitled to an evidentiary hearing despite jury's true finding as to a

---

[5] I submit that of the two divergent interpretations of section 189 (e)(2), the majority's interpretation does not "'more equitably sentence offenders in accordance with their *involvement in homicides*.'"  (Maj. opn., *ante*, p. 12, quoting Stats. 2018, ch. 1015, § 1, italics added.)  However, I acknowledge that the majority opinion currently represents the predominant view among the appellate courts.  (See *People v. Hollywood* (Feb. 28, 2024, B323018) __Cal.App.5th__, __ [2024 WL 832320]; see also *People v. Lopez* (2023) 88 Cal.App.5th 566–580 (maj. opn.); but see *id*. at pp. 581–591 (dis. opn. of Raphael, J.); *People v. Ervin*, *supra*, 72 Cal.App.5th at pp. 108–109.)

gang special circumstance]; *People v. Strong*, *supra*, 13 Cal.5th at p. 721 [defendant entitled to an evidentiary hearing despite jury's true finding as to a felony-murder special circumstance]; *People v. Reyes* (2023) 14 Cal.5th 981, 992 [defendant entitled to a second evidentiary hearing where trial court misunderstood the legal requirements of implied malice murder]; *People v. Lewis*, *supra*, 11 Cal.5th at pp. 962–964 [defendant entitled to the appointment of counsel upon the filing of a facially sufficient petition].)

For all the foregoing reasons, I respectfully dissent.



MOORE, J.

7